IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 41165

| STATE OF IDAHO, | ) | |
|---|---|---|
| | ) | 2014 Opinion No. 53 |
| Plaintiff-Respondent, | ) | |
| | ) | Filed: July 10, 2014 |
| v. | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| LLOYD HARDIN McNEIL, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Restitution order, vacated and case remanded.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Lloyd Hardin McNeil was convicted of voluntary manslaughter, first degree arson, and grand theft. The district court ordered restitution in excess of twenty thousand dollars. In this appeal, McNeil argues that the district court erred by awarding restitution to the victim's father for the cost of counseling and for an airline ticket for the victim's brother to attend her memorial service.

## I.

## BACKGROUND

In a previous appeal, we described the background of this case:

On March 5, 2011, firefighters responded to a residential fire in a Boise neighborhood. The firefighters determined that the fire was confined to a mattress and box spring located in a bedroom. After removing the mattress from the house, firefighters found the body of Natalie Davis lying on top of the box spring. Following an investigation, firefighters concluded that the fire was

intentional and human caused. This conclusion was supported by subsequent reconstructed tests of the scenario.

Pursuant to an investigation, police officers discovered that Davis' car was missing, along with her two dogs. Later, the dogs were located in a "no kill" shelter in Dillon, Montana and McNeil was identified as the individual who dropped the dogs off. Thereafter, McNeil was located in Seattle, Washington and arrested on a fugitive warrant.

McNeil was charged with second degree murder, first degree arson, and grand theft. Following a jury trial, he was acquitted of second degree murder and convicted of the lesser-included offense of voluntary manslaughter. He was also convicted of first degree arson and grand theft. The district court imposed consecutive terms of fifteen years determinate for the voluntary manslaughter conviction, twenty-five years indeterminate with ten years determinate for the first degree arson conviction, and fourteen years indeterminate for the grand theft conviction, resulting in a unified sentence of fifty-four years with twenty-five years determinate.

*State v. McNeil*, 155 Idaho 392, 395, 313 P.3d 48, 51 (Ct. App. 2013). In that prior appeal, we affirmed the judgment of conviction.

In this appeal, McNeil challenges the district court's order awarding restitution, which was entered after the judgment of conviction. As relevant here, the State requested restitution to reimburse the victim's father for a "plane ticket portion" and "counseling." McNeil filed a general objection to the requested restitution on the basis that he was unable to pay the amount sought, $28,692.22. Less than two weeks later, the court ordered McNeil to pay restitution in the amounts requested by the State, apparently without having held a hearing because McNeil's objection was not filed correctly. Thereafter, however, the district court conducted a hearing to consider McNeil's objection. At the hearing, McNeil indicated that the State should be required to present additional information so that he could properly object to individual restitution requests. The court allowed the State two weeks to provide additional evidence in support of its request for restitution. From our record, it does not appear that the State ever did so.

At a second hearing, McNeil argued that the cost of counseling for the victim's father should be disallowed because he was receiving counseling before his daughter's death. Therefore, McNeil argued, the counseling was not attributable to McNeil's crimes. He also argued against restitution for the cost of a flight for the victim's brother to attend the funeral. As to the counseling, the State conceded that sessions occurring before the victim's death were not compensable, but argued that the father likely discussed the trauma of his daughter's death with his counselor in later sessions. As to the flight, the prosecutor argued that it believed that the

plane ticket was included in the restitution request because the passenger escorted the victim's remains on the flight. The district court disallowed a portion of the requested restitution but included in the award the cost of the airline ticket and most of the counseling sessions.

McNeil appeals, arguing that the court erred by granting restitution for the counseling sessions and the airline ticket.

## II.

## ANALYSIS

Idaho Code § 19-5304(2) authorizes the sentencing court to order a defendant to pay restitution for economic loss to the victim of a crime. "Economic loss" includes, among other things, "lost wages, and direct out-of-pocket losses or expenses, such as medical expenses, resulting from the criminal conduct," but it excludes "less tangible damage such as pain and suffering, wrongful death or emotional distress." I.C. § 19-5304(1)(a). Economic loss must be established by "the preponderance of evidence submitted to the court by the prosecutor, defendant, victim or presentence investigator." I.C. § 19-5304(6). The sentencing court has discretion to determine whether restitution is appropriate and, if so, to set the amount. *State v. Hill*, 154 Idaho 206, 211, 296 P.3d 412, 417 (Ct. App. 2012); *State v. Higley*, 151 Idaho 76, 78, 253 P.3d 750, 752 (Ct. App. 2010); *State v. Card*, 146 Idaho 111, 114, 190 P.3d 930, 933 (Ct. App. 2008). On appeal, the factual findings of the sentencing court will not be disturbed if they are supported by substantial evidence. *State v. Straub*, 153 Idaho 882, 885, 292 P.3d 273, 276 (2013); *Hill*, 154 Idaho at 211, 296 P.3d at 417. Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Straub*, 153 Idaho at 885, 292 P.3d at 276; *Kinney v. Tupperware Co.*, 117 Idaho 765, 769, 792 P.2d 330, 334 (1990).

### A. Counseling Expenses of the Victim's Father

We consider first the restitution claim for the expense of counseling services for the victim's father. McNeil argues that these expenses were not compensable in restitution because they were not caused by his criminal conduct. He points to evidence that the father had been receiving counseling for a preexisting condition before the victim's death.[1]

---

[1] Below, the court excluded one counseling session, finding that it occurred before the victim died. On appeal, both parties agree that a second session also occurred before the victim's death. The State concedes that the second, pre-death session is not compensable.

To justify an award of restitution, the State must show a causal relationship between the defendant's criminal conduct and the damages for which restitution is claimed. I.C. § 19-5304(7); *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011); *Hill*, 154 Idaho at 212, 296 P.3d at 418. This requirement is expressed in the restitution statute itself, which defines "victim" as someone who suffers economic loss or injury "as the result of the defendant's criminal conduct," and I.C. § 19-5304(1)(e)(i), where economic loss is defined to include lost wages "resulting from the criminal conduct." I.C. § 19-5304(1)(a). In determining whether the requisite causal nexus exists, a court applies principles from the common law of torts, including standards of actual and proximate cause. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *State v. Nienburg*, 153 Idaho 491, 495, 283 P.3d 808, 812 (Ct. App. 2012). Actual cause refers to whether "a particular event produced a particular consequence" and is a "but for" test. *State v. Lampien*, 148 Idaho 367, 374, 223 P.3d 750, 757 (2009). Proximate cause focuses on the foreseeability of the injury, requiring the court to determine whether the injury was "so highly unusual that we can say, as a matter of law that a reasonable [person], making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur." *Id.* (quoting *Cramer v. Slater*, 146 Idaho 868, 875, 204 P.3d 508, 515 (2009)). This causation must be shown by a preponderance of the evidence. I.C. § 19-5304(6); *Hill*, 154 Idaho at 212, 296 P.3d at 418; *In re Doe*, 146 Idaho 277, 284, 192 P.3d 1101, 1108 (Ct. App. 2008).

We agree with McNeil's assertion that the State provided no evidence showing the father's need for counseling was caused by the victim's death. The prosecutor offered only speculative argument that even though the counseling was initiated prior to the crime, "[i]t's also hard to believe that after the murder of the daughter that that wouldn't come up." The record shows that members of the victim's family were traumatized by McNeil's crime. Their victim impact statements at sentencing disclose their grief and anguish. It is entirely plausible that some of the post-death counseling was necessitated by McNeil's acts. Nonetheless, we are constrained to hold that the State failed to present *evidence* of such fact.[2] Speculative argument does not constitute evidence. Because the State failed to prove causation, it was error for the district court to grant restitution for the cost of counseling for the victim's father.

---

[2]     The Idaho Rules of Evidence apply to restitution hearings, except as provided in I.C. § 19-5304(6). I.R.E. 101(d)(7).

**B.    Cost of Brother's Flight to Victim's Funeral**

McNeil also disputes the restitution award for the brother's airfare to attend the victim's funeral. The parties agree that the victim's father paid for the brother to fly to the funeral, but they dispute the purpose of this flight. The State argued below (again without evidence) that the flight was required to escort the victim's remains to the place where her funeral was held. On appeal, without citation to any authority, the State asserts that "corpses may not travel on an airline without an accompanying passenger." McNeil argues that because the body had already been cremated, it would have been possible for the family to send the remains by "Priority Mail Express service." Fortunately, we need not resolve this dispute concerning permissible methods of transporting human remains, for the State did not meet its burden of proof on this issue. The State provided no evidence supporting its factual contentions that the brother accompanied the victim's remains on the flight. Accordingly, we conclude the State failed to prove that the airfare was required in order to transport the victim's remains.

That determination does not end our inquiry, however. It is undisputed that there was a second purpose of the flight, the brother's attendance at the victim's funeral. Therefore, we must determine, as a legal matter, whether restitution was properly awarded for such an expense.

First, we note that both the victim's father who purchased the ticket and the brother who took the flight are "victims" who may claim compensation under the restitution statute. Idaho Code § 19-5304(e)(i) defines "victim" as:

> The directly injured victim which means a person or entity, who suffers economic loss or injury as the result of the defendant's criminal conduct and shall also include the immediate family of a minor and the immediate family of the actual victim in homicide cases.

Both the victim's father and her brother are the "immediate family" of the victim. Although the term "immediate family" is susceptible to varying interpretations, we conclude that both brothers and fathers fall within the core meaning of that term. For example, the Idaho Code defines "immediate family" in at least four places. *See, e.g*., I.C. § 15-5-315 (for the purposes of the guardian ad litem statutes "immediate family" includes but is not limited to "spouse, parents, siblings, children and next of kin"); I.C. § 20-101C (for prison furlough purposes "Immediate family is defined as a mother or father, brothers, or sisters, of the whole or halfblood, a wife or husband, or lawful issue."); I.C. § 41-1325 (for certain insurance fraud regulations "the term 'immediate family member' means a parent, mother-in-law, father-in-law, husband, wife, sister,

5

brother, brother-in-law, sister-in-law, son-in-law, daughter-in-law, or a son or daughter."); I.C. § 44-1601 (for the purposes of farm labor contractor licenses "'Immediate family member' means the spouse, children, brother, sister, mother or father."). In each case, both siblings and parents are included as "immediate family." *See also State v. Payne*, 146 Idaho 548, 575, 199 P.3d 123, 150 (2008) (interpreting the term "immediate family" for the purposes of the victim impact statement statute, I.C. § 19-5306).[3]

McNeil contends that such transportation costs are not compensable for three reasons. First, he argues that air travel to a funeral is not a direct result of his crime because a person need not attend a funeral and a funeral need not be held at a distant locale. Second, he analogizes to the Crime Victims Compensation Act, which serves some of the same purposes as the restitution statutes and authorizes payments for a victim's funeral and burial or cremation and for transportation of the victim's body, but not for family members' travel to a funeral. *See* I.C. § 72-1019(4). Finally, he argues that the "rule of lenity" applies and calls for an interpretation in his favor to the extent that the restitution statute is ambiguous.

We conclude that the travel costs to attend a funeral are too indirect to be compensated through the restitution statute. In *Straub*, the Idaho Supreme Court considered a restitution award for the amount by which medical insurance premiums for a homicide victim's family exceeded the amount that had been paid for insurance through the victim's employment. The Supreme Court held that this increased expense was not a sufficiently direct consequence of the crime to be compensable in a restitution award. The Court stated:

> [T]here is a distinction between medical expenses and medical insurance. Medical expenses are expressly included in the definition for economic loss in I.C. § 19-5304(1)(a) if they are a direct result of the criminal conduct. In contrast, the acquisition of medical insurance does not directly correlate as a direct consequence of the criminal conduct. Although it is foreseeable that the death of the lone family breadwinner would leave the family without health insurance, foreseeability does not equal a "direct" result.

*Straub*, 153 Idaho at 890, 292 P.3d at 281.

In that case, the change in insurance status was a foreseeable result of causing a death; the amount of loss was not speculative, but was easily determinable; and the victim's family

---

[3]  Our decision here is confined to interpretation of I.C. § 19-5304(e)(i) and its inclusion of a homicide victim's father and brother; we do not suggest an interpretation of the term "immediate family" as it may apply to other relatives or in other contexts.

would not be enriched but would merely maintain a benefit they enjoyed before the victim's death. *Id.* Nevertheless, the Court concluded that the premiums were not sufficiently "direct." The Supreme Court did not articulate any test or factors to consider in determining whether an economic loss is insufficiently direct, but we can discern some factors that may have influenced the Court's decision. First, the insurance expense was not an *automatic* result of the crime. That is, the family was not required to maintain health insurance; they chose to. Second, their need for health insurance was not caused by the defendant's crime. Third, the price and coverage of the insurance they chose could have been influenced by numerous factors unrelated to the defendant's crime. Lastly, it is necessary for courts to place a sensible limit on what may be recovered through restitution, recognizing that restitution is not intended to encompass all of the damages that would be recoverable in a civil lawsuit. *Straub*, 153 Idaho at 890, 292 P.3d at 281.

Most of these factors point to a conclusion that a family member's travel to a homicide victim's funeral is not a direct result of the defendant's crime for purposes of restitution. Although we understand the depth of emotion that impels a person's choice to attend the funeral of a close family member, the brother's attendance here was a choice, not a loss or expense that flowed automatically from the crime. The father or brother selected a specific mode of travel from numerous options available at various costs. Finally, like the Supreme Court, we must recognize some limit on restitution liability, even for expenses that may meet a proximate cause standard.[4] Accordingly, we hold that this expense is too indirect to be compensated.

## III.
## CONCLUSION

The State did not meet its burden to prove that counseling expenses of the victim's father were caused by McNeil's crime. Accordingly, the district court erred by awarding restitution for pre- and post-death counseling costs. We also conclude that the cost of traveling to a victim's funeral is not compensable through restitution because that cost is too indirect. For these reasons, we vacate the order awarding restitution and remand for amendment of the restitution order.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**

---

[4] We also note that it is doubtful that a brother's expense to attend a decedent's funeral would be recoverable even in a tort action for wrongful death as, under Idaho law, a brother would not usually be an "heir" entitled to bring a wrongful death action. *See* I.C. § 5-311.